## Raymer, Appellant, *v.* Standard Steel Works.

*Negligence—Master and servant—Unsafe appliance.*

In an action against a steel company by one of its employees to recover damages for personal injuries, it appeared that plaintiff was injured while working about a crane employed in carrying steel billets from the furnace where they were heated, to the die on which they were to be hammered into shape. His employment required him to assist by means of large tongs in changing from time to time the position of the heated billets on the die as the hammering proceeded. The tongs were attached to the billet by a chain passing around it. While thus engaged the tie rod connecting the crane from which the billets and tongs were suspended, with the mast or upright, broke, with the result that the arm of the crane being unequal to the burden, dropped below the proper level, and with it fell the burden, billet and tongs, in such a way as to injure the plaintiff. Binding instructions for defendant were given on the ground that the evidence established that the tie rod conformed to a standard of safety that common experience had accepted as adequate. *Held*, that there was sufficient conflict of testimony on this point to require a submission to the jury.

Argued May 21, 1906. Appeal, No. 166, Jan. T., 1906, by plaintiff, from judgment of C. P. Mifflin Co., Aug. T., 1903, No. 38, on verdict for defendant in case of Philip G. Raymer v. Standard Steel Works. Before MITCHELL, C. J., BROWN, POTTER, ELKIN and STEWART, JJ. Reversed.

Trespass to recover damages for personal injuries. Before SAVIDGE, P. J., specially presiding.

The facts relating to the accident are stated in the opinion of the Supreme Court.

The court gave binding instructions for defendant.

Verdict and judgment for defendant.

*Error assigned* was in giving binding instructions for defendant.

*J. Howard Neely*, with him *J. C. Houser* and *A. Reed Hayes*, for appellant.—Providing proper tools and machinery is an absolute duty of the employer, a direct, personal, absolute obligation from which nothing but performance will relieve him : Prevost v. The Citizens' Ice & Refrigerating Co., 185 Pa. 617 ; Lewis v. Seifert, 116 Pa. 628 ; Ross v. Walker, 139 Pa. 42 ;

Prescott v. Ball Engine Co., 176 Pa. 459 ; Finnerty v. Burnham, 205 Pa. 305.

It is manifest that the authorities which hold that common, ordinary usage is the test of the employer's responsibility, as in Titus v. R. R. Co., 136 Pa. 618, and Leonard v. Herrmann, 195 Pa. 222, did not warrant the binding instructions for defendant under the evidence in the case : O'Brien v. Sullivan, 195 Pa. 474 ; Hoffman v. Clough, 124 Pa. 505 ; Bannon v. Lutz, 158 Pa. 166 ; Honifius v. Engineering Co., 196 Pa. 47 ; Sopherstein v. Bertels, 178 Pa. 401 ; Finnerty v. Burnham, 205 Pa. 305.

*R. C. Elder,* with him *D. W. Woods* and *W. W. Uttley,* for appellee.—An employer need not inform an adult employee of an obvious danger.  An employee, by contracting for the performance of hazardous duties, assumes such risks as are incident to their discharge from causes open and obvious, the dangerous character of which causes he has had opportunity to ascertain : Reese v. Clark, 146 Pa. 465 ; Higgins v. Fanning, 195 Pa. 599 ; Cunningham v. Fort Pitt Bridge Works, 197 Pa. 625.

An employer performs his duty when he furnishes machinery and appliances of ordinary character and reasonable safety, and the former is the test of the latter : Titus v. Bradford, etc., R. R. Co., 136 Pa. 618 ; Kehler v. Schwenk, 144 Pa. 348 ; Dooner v. Del. & Hudson Canal Co., 171 Pa. 581 ; Leonard v. Herrmann, 195 Pa. 222 ; Service v. Shoneman, 196 Pa. 63.

OPINION BY MR. JUSTICE STEWART, June 27, 1906 :

The plaintiff was injured while working about the crane employed in carrying steel billets from the furnace where they were heated, to the die on which they were to be hammered into shape.  His employment required him to assist by means of large tongs, in changing from time to time the position of the heated billets on the die as the hammering proceeded.  The tongs were attached to the billet by a chain passing around it.  While thus engaged the tie rod connecting the crane from which the billets and tongs were suspended, with the mast or upright, broke, with the result that the arm of the crane being unequal to the burden, whatever that was, dropped below its proper

level, and with it fell the burden, billet and tongs, in such a way as to occasion the injuries to the plaintiff. Under what circumstances it broke, and what elements contributed to its fall, it does not concern us to inquire, since, as the case was presented, we have nothing to consider but the feature of it that determined the action of the court below in directing a verdict for the defendant; and this may readily be understood from the meager statement of the facts we have above given.

The learned judge very properly held that the employer's duty, with respect to tools and appliances furnished his employees, is fully met when he provides such as are reasonably safe, and that the law will so regard them if they conform to the standard approved by general experience, as attested by general adoption for like uses under like conditions. But we cannot agree that the testimony in the case, on one side and the other, with reference to the tie rod, admittedly an essential appliance in connection with the crane, was in such accord as to warrant the court in concluding that a common standard of safety with respect to tie rods had been established, and that in this case the rod conformed to that common standard. There was little disagreement between plaintiff's and defendant's witnesses as to the common factor of safety observed when the strain is simply from a dead or constant steady weight, the common factor of safety in such case being as here about six to one; but there was a marked divergence in the testimony as to what is required or observed when, because of the manner of its employment, in addition to the dead weight, the crane is made to stand, in more or less degree, the force or shock of a steam hammer, as was the case here. " Is it intended that the crane shall carry any of the blow received from the hammer?" was asked of the plaintiff's witness, Mr. Whitham, a professional mechanical engineer. His reply was : " I don't suppose it is intended, but it is impossible to prevent it with a crane constructed this way." This same witness, speaking, as he said, not from any book or theory, but from observation and experience, testified to the insufficiency of this tie rod for the burden and strain that was expected of it, and to which it was subjected. What this experience and observation amounted to may be gathered from his answer to the question asked him, whether he had any experience as to what was being done in

establishments working metal, iron or steel, on a crane with working hammer. His reply was : " Since I have been in Philadelphia I have been in at least sixty or seventy iron works in some capacity, either to advise a prospective buyer, or some one to whom the factory wanted to sell something ; in such capacity my work constantly takes me among such plants." He further testified that for the last twenty-eight years he had seen cranes at work with drop hammers at more than half a dozen large establishments which he named, and that he knew of no machines designed for operation in motion which had a factor of safety less than ten to one. Mr. Kitchell, another of the plaintiff's witnesses, also a professional engineer, testified to an experience extending over fifteen years in connection with working cranes, and the required factor of safety for a tie rod on a crane with working hammer as given by this witness is twelve, twice that which was afforded in the present case. He referred to a mill that he had recently visited where the factor of safety was ten in a crane employed only in lifting dead weight, and said he had had practical experience in works of this kind both at Scranton and Bethlehem.

It is not for us to consider the weight of this evidence, or contrast it in this respect with the evidence offered on behalf of defendant. The exhibit we make of it, is simply to show that there was not that absolute concurrence of testimony that warranted the court in assuming that the tie rod here, conformed to a standard of safety that common experience had accepted as adequate, and so shown by its general adoption. There was unquestionably conflict between the testimony adduced by the plaintiff and that offered by defendant on this point. This left it an open question for the jury, who alone could decide it. To them it should have been submitted under proper instructions. The assignment of error which relates to the binding instructions given by the court is sustained.

Judgment reversed and venire facias de novo awarded.